## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.     16-CV-02840-CBS

Mark Emerson Janny,

Plaintiff,

v.

John Gamez, Community Parole Officer, Colorado Department of Corrections,

in his individual capacity,

Lorraine Diaz De Leon, Parole Supervisor, Colorado Department of Corrections,

in her individual capacity,

Jim Carmack, former Director of The Denver Rescue Mission in Fort Collins,

in his individual capacity,

Tom Konstanty, former Co Director and current Director of The Denver Rescue

Mission in Fort Collins, in his individual capacity,

Defendants.

RECEIVED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

NOV 02 2017

JEFFREY P. COLWELL
CLERK

---

4TH ▬ **AMENDED PRISONER COMPLAINT**

---

## A. PARTIES

### Plaintiff:

1.    Mark Janny, Larimer County Jail, 2405 Midpoint Dr., Fort Collins, CO 80525

### Defendants:

2.    John Gamez, Community Parole Officer, Colorado Department of Corrections, 3000 S.
College Ave., Fort Collins, CO 80525

At the time of the claim(s) alleged in this complaint was the Defendant   acting under color of
state law? _X_YES ____NO

Explain:  Defendant Gamez is a Colorado State Parole Officer and was acting in that capacity in
this complaint.


3.    Lorraine Diaz De Leon, Parole Supervisor, Colorado Department of Corrections, 3000 S.
College Ave., Fort Collins, CO 80525

At the time of the claim(s) alleged in this complaint was the Defendant   acting under color of
state law? _X_YES ____NO

Explain:  Ms. Diaz De Leon was Defendant Gamez's supervisor at the time of this complaint.


4.    Jim Carmack , former Director of The Denver Rescue Mission in Fort Collins, currently
retired (?), 3281 Crawford dr., Canon City, CO 81212,  Phone # (719) 766-1607

At the time of the claim(s) alleged in this complaint was the Defendant   acting under color of
state law? _X_YES ____NO

Explain:  Jim Carmack was the director of The Program, a community placement that I was

forced to stay at and participate in by a condition of parole.

5.    Tom Konstanty, former Co-Director current Director of The Denver Rescue Mission in

Fort Collins, 316 Jefferson Street, Fort Collins, Colorado 80524

At the time of the claim(s) alleged in this complaint was the Defendant   acting under color of

state law?  _X_YES ____NO

Explain:  Tom Konstanty was the co-director of The Program, a community placement that I was

forced to stay at and participate in by a condition of parole.

**B. JURISDICTION**

1.      I assert jurisdiction over my civil rights claims pursuant to 28 U.S.C. 1343 and 42 U.S.C.
1983

## C. NATURE OF THE CASE

On Feb 3rd, 2015 I had a parole revocation complaint dismissed by the Colorado Parole

Board. Instead of Community Parole Officer John Gamez placing me back on parole as if no

complaint had occurred, with no additional consequences, as Colorado law prescribes (Goetz v.

Gunter 830 P. 2d 1154 (Colo App.1992) ) he and his supervisor, Defendant Loraine Diaz de

Leon, placed me in The Program, a Christian Faith Based Community Placement where I was to

stay until I saw the Parole Board on the complaint Defendant Gamez planned to refile. I had an

electronic monitor placed on my ankle and if I was not on the Program premises when

commanded I could be charged with escape. The Parole Board had ordered me released from

incarceration which on paper I was but in truth I was being held in a facility until I saw the

parole board. The reason the parole complaint was originally dismissed was I had been

incarcerated more the legal time allotted before seeing the parole board.

I was forced to stay in and participate in The Program against my will at the threat of

arrest and parole revocation. It was a directive of parole that I follow all of The Program's house

rules which includes participation in The Program. Most of The Program house rules and

activities were Christian faith related. Twice weekly bible studies, daily prayer, daily chapel,

and church were all mandatory or a participant would be expelled from The Program. I am an

atheist. I told program director Defendant Jim Carmack, co-director Defendant Tom Konstanty,

and Defendant Gamez I was an atheist. I was told by the Program's director, Defendant

Carmack I was not allowed to discuss or share my beliefs or tell others I was an atheist while in

The Program. Defendant Gamez was then called by Defendant Carmack and they decided I had

to stay in The Program despite my being an atheist, follow all the rules and participate in all the

Christian activities or my parole would be violated. Once Director Carmack found out I was an atheist he requested Defendant Gamez to change my curfew so that I was for practical purposes 5 days a week not allowed to leave the facility at all. The Program also did not allow me to get a job or constructively build my life which is a major goal of parole. My freedom to leave the facility, unlike a regular parolee or program participant, was unfairly and overly restricted due in large part (and solely in truth) to my being an atheist. Multiple parolees have been placed in The Program. Both Defendant Carmack and Defendant Konstanty supervised and led Christian activities I told them I did not want to be a part of. I was kicked out of The Program on Feb. 8th, 2015 for being uncooperative and breaking the rules.

I was arrested Feb. 9th, 2015 after being kicked out of The Program even though I followed Defendant Gamez's direct order I was given in case I was no longer welcome at The Program. There was no legal reason for the arrest specifically after the parole board ordered my release.

The damages I am asking for are based off of Defendant Gamez and Defendant Diaz De Leon not releasing me back to my parole as it was before my Feb 3rd, 2015 parole revocation hearing as the law prescribes and forcing me into a program while wearing a electronic monitor so that if I left the program I could be charged with escape. Since I was being imprisoned by Defendants Gamez and Diaz De Leon and that imprisonment directly violated the Parole Boards directive to release me from actual custody the imprisonment was not legal and therefore 4th amendment false imprisonment. By forcing me into a Christian faith based community placement where Christian activities were mandatory to not be kicked out, after they were told I was an atheist violates the establishment clause of the first amendment. In the Program I was told

not to discuss or share my religious beliefs or tell others I was an atheist which violates the free
exercise clause of the first amendment. Defendant Carmack and Defendant Konstanty are also
guilty of violating those religious rights. Additionally The Program and Parole imposed overly
restrictive conditions like not being allowed to work or not being allowed to leave the facility
because I was an atheist which violates fourteenth amendment equal protection of law. These
conditions eventually helped lead to a loss of liberty, a 150 day revocation of my parole, loss of
residence, loss of a job, loss of wages and the suffering that accompanies incarceration.

All claims either include a pattern of abuse, malicious intent or involve a reckless
or callous indifference to my rights.

## D. CAUSE OF ACTION

CLAIM ONE: FOURTH AMENDMENT FALSE IMPRISONMENT

1.    On March 8th, 2013 I received a 24 month sentence to the Colorado Department of
corrections to be followed by a mandatory 24 months of parole for Larimer County 13 CR 104
Attempted Escape.

2.    On Dec. 10th, 2014 I was release from prison to parole.  I was assigned Community
Parole Officer Defendant John Gamez who was directly supervised by Defendant Lorraine Diaz
de Leon.

3.    On Dec 30th, 2014 I was arrested for an alleged parole violation.  I was released on Jan.
2nd by Defendant Gamez and rearrested for the same violation on Jan 7th, 2015.  During my
re-arrest on Jan. 7th I told Defendant Gamez I had used illegal drugs.  This is the last time I had
admitted drug use, tested positive for drug use, or was accused of drug use while on parole.

4.    On Feb 2nd, 2015 the Colorado Parole Board dismissed the parole complaint against me
because of a violation C.R.S 17-2-103 (7) being held in custody longer than 30 days before
seeing the parole board.  I was to be released back to my parole as it was prior to my arrest.

5.    On Feb 3rd, 2015, the day after the board ordered my release, I was released from the
Washington County Jail back to parole.

6.    When the parole board determines that there was no violation or like here when the
complaint is dismissed the parolee's status should be reinstated as if no complaint had occurred,
consequently the parole period is not extended and no additional punishment is imposed. Goetz

v. Gunter 830 P. 2d 1154 (Colo. App. 1992) .

7.      On February 3rd at approximately 1 PM I met with Defendant Gamez at the Fort Collins

Parole office. Defendant Gamez with permission from Defendant Diaz de Leon refused to let me

continue with my parole as it was before my complaint.  I was given a parole directive that

placed me in The Denver Rescue Mission in Fort Collins and would have to follow all the "house

rules" or have my parole revoked.  House Rules apply only to The Program at Denver Rescue

Mission in Fort Collins which is a Christian program.  Defendant Gamez refused to investigate

any possible place of residence.  I gave him the address of Cassy Warembourg and Brenda

Kelley, family friends who have a safe, healthy, nurturing and otherwise respectable home.

Defendant Gamez told me he was placing me with his friend Defendant Carmack in The

Program until Defendant  Gamez could bring me in front of the parole board on the complaint

that had been dismissed without prejudice.  I asked if I could stay in just the shelter until he

investigated a permanent address.  Defendant Gamez said I could not and that I needed more

supervision and could not be trusted so until I was the board I would be in The Program.

8.      I told Defendant Gamez I did not want to be in The Program and shouldn't be forced to

stay in any facility or program to await a parole hearing because the parole board just ordered me

released from pre parole hearing incarceration and had released me back to my parole as it was

before the revocation hearing. Defendant Gamez said I could wait in The Program or jail.  This

was the first of many times he made me choose between a religious program or jail.

9.      I asked to speak to Defendant Gamez's supervisor, Defendant Diaz De Leon, and was

told the supervisor had already okayed the placement, had signed the parole conditions and that

several parolees were already placed in The Program (although not to await parole hearings).
Defendant   Diaz De Leon was unavailable to speak with.

10.    I was forced to sign a new parole directive with the additional illegal conditions of
residing in at The Denver Rescue Mission and follow all The Program's House rules (many
which promoted, enforced and required Christian practices).  House rules apply only to those in
The Program.  One who is just staying and sleeping at the overnight shelter is not subject to the
house rules.  The parole directive was more than just a directive to stay at the overnight shelter
since being subject to house rules imply being in the Program. When my parole was eventually
revoked these were not the parole conditions which were used to violate me although they were
the spirit or color of why I was violated.

11.    Defendant Gamez had me put on electronic monitoring and gave me monitoring box to
take with me and plug in when I got to The Program.  I was not given an Intensive Supervised
Parole pager or GPS monitoring unit that is standard for a parolee who is "homeless" and
sleeping at a shelter.  I was given the unit that goes in a residence or at a treatment program like
the lighthouse (another community placement) or the Program.

12.    Defendant Gamez ended the meeting by telling me to report directly to Defendant
Carmack at 316 Jefferson Street.  The Denver Rescue Mission in Fort Collins has no day shelter.
The only people allowed in the building before Chapel at 5 PM and dinners at 6 PM are
employees, and Program participants.

13.    I went to The Program at the Fort Collins Rescue Mission on Feb 3rd, 2015.  This is not
the same thing as the shelter at The Denver Rescue Mission in For Collins.  The shelter is a place

parolees can use as an address while on parole. The Program is a Christian Faith based community placement that the Dort Collins Parole Branch Office uses to rehabilitate and house parolees. The Program offers free bed space and parole offers The Program free labor and referrals. I arrived at approximately 3 PM and set up my electronic monitoring box sometime soon after. The employees were expecting me when I arrived. Only people in The Program are allowed into the building at this time.

14.   It was clear although I was on parole on paper (the refiled complaint I received on 2/3/15 was marked a summons rather than an arrest / parole hold) in spirit and reality I was still being held in a facility awaiting a parole hearing which directly violated the Parole Board's order to release from being held while awaiting to see the Parole Board.

15.   I was forced to stay at this Program against my will after the parole board ordered Defendant Gamez to have me released from actual custody. Since my revocation was dismissed Defendant  Gamez had no legal standing to keep me in a program until I saw the board again according to Goetz v. Gunter 830 P. 2d 1154 (Colo. App. 1992). Additionally Defendant Gamez could not legally put me in a religious program against my will. The electronic monitor imprisoned me further because if I was not on the premises while Defendant Gamez demanded I be there I was subject to felony escape charges.

16.   Plaintiff incorporates all allegations 1-49

# D. CAUSE OF ACTION

## CLAIM TWO: FIRST AMENDMENT ESTABLISHMENT CLAUSE

17.    Plaintiff incorporates all allegations 1-49

18.  On Feb. 3rd, 2015 I was placed into The Program at The Denver Rescue Mission in Fort Collins against my will by a directive of parole.

19.  Defendant Gamez and Defendant Diaz De Leon amended my parole so that I had to stay at The Program, follow all the house rules which meant participate in The Program or I would have my parole revoked.

20.  The Program is a Christian faith based community placement. The house rules include mandatory daily prayer, daily chapel (church service), twice weekly bible study, an outside of the facility church service on Sunday and one-on-one religious counseling.

21.    On Feb. 4th, 2015 at 9:00 A.M. I had my first parole office meeting of that day.  I told Defendant Gamez I did not want to be at the Program and that I still had a very appropriate place to live.  He told me he did not want to risk himself going into any place I found and that I would be at The Denver Rescue Mission under Defendant Carmack's watch until I saw parole. Defendant Gamez served me a new parole revocation complaint that was a summons for the previously dismissed parole complaint.

## D. CAUSE OF ACTION

CLAIM THREE: FIRST AMENDMENT FREE EXERCISE CLAUSE

22.    Plaintiff incorporates all allegations 1-49

23.    I am an atheist.

24.    I was orientated on the Program house rules by Defendant Carmack and Defendant Konstanty on Feb. 4th, 2015. At that time I told them I was an atheist. I was told by Defendant Carmack not to talk about or express my beliefs while in The Program or tell anyone I was an atheist.

25.    I told the Defendant Carmack and Defendant Konstanty they were violating my rights, that parole forced me to be in The Program, that I did not want to be there, and they could not force their religion upon me or stop me from expressing my religious beliefs.

26.    Defendant Carmack told me I was not the type of person the Program accepted (meaning an atheist who didn't want to be there) and that he was going to call Defendant Gamez and maybe I should be in jail. After Defendants Gamez's and Carmack's phone conversation that occurred at roughly 10 A.M. I was told it was decided even though I was an atheist I would stay at the Program and that Defendant Gamez had assured Defendant Carmack that I would follow all the rules and participate in all the activities or I would go to jail and prison. The overnight shelter closes at 7 A.M. and only Program participants are allowed in the building at the time this all occurred.

27.    I told Defendant Carmack I would not participate in Christian activities. He said I would

or I would go back to prison. He then assigned me a chore that would not allow me to leave the facility until 4:30 PM 5 days a week. He then informed he was going to petition Defendant Gamez to have my curfew changed to 4:30 PM rather than the 9:00 PM and 10:00 PM curfew of the other program participants. Defendant Carmack told me I would not be allowed to get a job and that I was basically in his care until my parole would be violated by the Parole Board. This all happened after Defendant Carmack and Defendant Tom Konstanty found out I was an atheist.

28.    Defendant Carmack told me he and Defendant Gamez were good friends and that at one time Defendant Gamez had been his parole officer while Defendant Carmack was on parole (although I don't know how true that is or if Defendant Carmack was just trying to relate to me). Defendant Carmack told me I was a guinea pig and so far The Program had only accepted women from parole but he was doing his friend Defendant Gamez a favor and the plan was to start taking in males as well. Several other parolees were at The Program with me who had been placed there by Defendant Gamez and upon information and belief with Defendant Diaz De Leon's approval.

29.    On February 4th Defendant Carmack called Defendant Gamez and request an impromptu parole office meeting, my second of the day which Defendant Gamez granted. Defendant Carmack drove me to the meeting in a white four-door sedan with "The Denver Rescue Mission in Fort Collins" on the side. Defendant Carmack and I were both taken back to Defendant Gamez's office to have the meeting at approx 3 PM. During the meeting Defendant Carmack complained about my attitude of being stuck in the program, being an atheist and his fears I would not participate with a good attitude. Defendant Carmack had Defendant Gamez reaffirmed to me that if I did not follow the rules of the Program I would have my parole

violated. Then Defendant Carmack asked to have my ISP electronic monitoring curfew be
changed from whatever it was (7, 8 or 9PM I don't remember but it will be documented) to 4:30
PM. Defendant Gamez agreed to have my curfew changed and had it changed while me and
Defendant Carmack were still in his office. It was reiterated I would participate or be violated, I
could not get a job, and I was really just waiting to see the Parole Board again.

30.     At 4:30 PM the overnight shelter is not open and only program participants are allowed
in the building. The chapel opens shortly after and is the only part of the mission open to the
public at that time meaning if I was not in the Program as Defendant Gamez alleges than
Defendant Gamez forced me to attend chapel every day. However, I was in The Program
because Defendant Gamez forced me there and Defendant Carmack wanted my curfew to be
4:30 so he could force me to be back in time for chapel so he could force me to go.

31.     Between Feb 3rd, 2015 and Feb 8th, 2015 I was forced to attend two Christian bible
studies led by Defendant Tom Konstanty. Defendant Konstanty acknowledged he knew that I
did not want to be there and was only there because I would be consequenced if I was not.

32.     Between February 3rd, 2015 and February 8th, 2015 I was to attend daily prayer
(dedication), Chapel and forced labor. I skipped a few times and was reprimanded by Defendant
Carmack and Defendant Konstanty. I missed a meal once while being reprimanded by
Defendant Carmack.

33.     On or about Feb. 5th, 2015 Defendant Carmack summoned me to his office for an
apparent attempt to convert me to Christianity. We sat in silence until I agreed to speak. We
discussed many theological theories of existence and he even tried to coerce me with Pascal's

Wager. After discussing the history of the Bible I was allowed to leave. I was pestered in ways similar to this about my religious beliefs throughout my stay.

34.    The morning of February 8th, 2015 Defendant Carmack took me aside and told me if I broke any more rules (missed prayer roll call, skipped chapel, was late to group) I would be kicked out. I refused to go to an outside the facility church service that day or attend chapel that day. When Defendant Carmack found out I was kicked out of The Program. I left the facility as requested.

35.    Defendant Carmack and Defendant Gamez continually made it clear I would participate in Christian activities or would go to jail.

36.    Upon information and belief Defendant Gamez with Defendant Diaz De Leon's permission continued to place parolees into The Program.

37.    I had not used any drugs since January 7th or before my parole records will support this. I was tested multiple times by both parole and the Program.

## D. CAUSE OF ACTION

CLAIM FOUR: FOURTEENTH AMENDMENT EQUAL PROTECTION OF LAW
RELIGIOUS DISCRIMINATION

38.    Plaintiff incorporates all allegations 1-49

39.    I am an atheist.

40.    While in The Program I was not allowed to do things fundamental to parole or things all
the other Program participants who were Christian were allowed to do including getting a job,
find housing, leaving the building for more than brief periods of time or having later curfews.

41.    While in the Program after The Program's Defendant Carmack found out I was an atheist
I was given a chore that did not allow me to leave the facility until 16:30 five days a week.
Additionally upon Defendant Carmack's request to Defendant Gamez my parole curfew was
changed to 4:30 PM several hours earlier than it was before Defendant Carmack made that
request. I wasn't allowed the time other Program participants and the other parolees were
allowed in the community because of my religious beliefs.

42.    My prior job as a mover for Muscle 4 Hire would have rehired me but Defendant Gamez,
Defendant Carmack, and Defendant Konstanty would not allow me to work. I had contacted
James Storer immediately after my initial parole meeting upon release from the Washington
County Jail on February 3rd, 2015 and he told me to come into work that Friday. I had to call
him and tell him my Parole officer would not let me have a job. I was never rehired because I
was considered unreliable from that point.

43.     During my initial parole meeting after my release from Washington County Defendant Gamez told me I would be given a chance to prove to the parole board that I should not have my parole revoked.  I could do this by showing up to all my parole meetings, finding a job, staying clean and by otherwise being a model parolee.  Once Defendant Gamez placed me in this Christian program and found out I was an atheist he took that opportunity away by not allowing me to get a job or do anything else to constructively further my life.  He also made me choose between prison or participating in Christian activities.  Defendant Gamez decided I should not have a chance to not go to prison and should go to prison because I was an atheist

44.     After being kicked out The Program on 2/8/15 I went to Cassy Warembourg's house, an address I had previously given my parole officer when he refused to investigate it as a potential residence.

45.     Defendant Gamez had given very specific instructions on what to do if I was kicked out of The Program.  If kicked out I was to go to the parole office if it was open.  If it was not I was to wait until the next time the office opened and report that day.  I was kicked out Sunday February 8th, 2015 so the parole office was not open until the next day.

46.     On February 9th, 2015 I attempted to find an appropriate treatment center to enter while awaiting the parole board at but failed, although I should not have been forced to go to treatment at all.  I then went to the parole office in hope of convincing Defendant Gamez not to revoke my parole.  I followed Defendant Gamez's instructions of what to do if I was kicked out of The Program and had not done anything legally wrong.  The parole complaint that eventually revoked my parole made no mention of The Program or related violations although it was

brought up at the actual hearing. He was not there and had put out a warrant for my arrest already. Upon information and belief Defendant Gamez did no independent investigation of what happened at The Program.

47.    I was arrested for the complaint that was filed with the parole board on 2/4/15 and instead of facing my parole revocation hearing while in the community I had to wait in jail. There was no legitimate reason for that incarceration.

48.    My parole was eventually violated for my whereabouts being unknown (absconding) on 2/9/15. This is impossible based on my DOC time computation report that says I was in parole's good grace on 2/9/15 and put in custody on 2/9/15 and also was on absconding status on 2/9/15. A parolee cannot start the day in paroles good grace, end the day in custody and have absconded that day.

49.    Defendant Gamez actual motivation for the arrest and revocation were my being kicked out of The Program on 2/8/15. The official reason was never given for the arrest. The official reason for the revocation was absconding on 2/9/15. However as the arrest warrant was entered on 2/9/15 at 9:00 A.M., and I could not have absconded at that time since I was in parole's good grace during the date of 2/9/15 according to my DOC time computation report, it is clear the arrest was not for absconding.

## E. PREVIOUS LAWSUITS

I **have** filed a lawsuit, besides this lawsuit, in federal court while incarcerated.

**Name of Defendants in other lawsuit:**

Two Washington County Jail Deputies   *and  Palmer, et al.*

**Docket number and Court name:**

17-CV-00050-CBS   US District Court District of Colorado   *17-CV-00194-CBS  US district court*

**Claim raised in lawsuit:**

Failure to protect   *retaliation, access to courts*

**Disposition of prior lawsuit:**

Pending   *Pending*

**Result of any appeal in the prior lawsuit:**

Not applicable   *Not Applicable*

## F. ADMINISTRATIVE RELIEF

Is there a formal grievance process at the institution I am confined?

Yes

Did I exhaust all available administrative remedies?

Yes

1.      I was not incarcerated during the time of these claims until February 9th when I was

arrested and sent first to The Larimer County Jail and then The Washington County Jail.

2.      I was on parole during the time of the claims which is supported by the fact that my

parole complaint served on me on Feb. 4th 2015 was marked as a summons rather than an

arrest/hold.  Exhaustion of available administrative remedies is not required when not

challenging prison conditions/conditions of confinement.

3.      Nonetheless I attempted to properly exhaust available administrative remedies for all

claims but was denied access to the forms.

4.      DOC grievances are not available while at The Denver Rescue Mission in Fort Collins

Program, the Larimer County Jail or Washington County Jail.  Washington County Jail is a DOC

holding facility and should by CDOC AR 850-04 grievance policy have DOC grievances

available.

5.      I made multiple requests for DOC grievances while at Washington County but was

denied the forms by the Washington County Jail.

6.    I requested grievances from Defendant Gamez while at the Washington County Jail and
my requests were ignored.

7.    The Denver Rescue Mission in Fort Collins Program has no grievance procedure.

## G. REQUEST FOR RELIEF

1.      Nominal damages

2.      A declaration that the acts and omissions described herein violated my rights under the constitution and laws of the United States.

3.      Compensatory damages ~~against~~ against each Defendant. jointly and severally.

4.      Punitive damages ~~against~~ against Defendants Gamez and Diaz De Leon ~~against~~.

5.      Punitive damages ~~against~~ against Defendants Jim Carmack and Tom Konstanty ~~against~~.

6.      Jury trial on all issues triable by jury.

7.      Attorney fees.

8.      Recovery of all cost of suit.

9.      Any other relief the Court deems appropriate.

10.     Presumptive damages

**VERIFICATION**

**DECLARATION UNDER PENALTY OF PERJURY**

I declare under the penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. 1746; 18 U.S.C. 1621.

Executed at Fort Collins, CO on ___10/24/17___ (Date)

Mark Janny
Larimer County Jail
2405 Midpoint drive
Fort Collins, CO



Colorado Department of Corrections
Name _Mack Henry_
Register Number _142344_
Unit _D#01_  _3.8314_
Box Number _PO BOX 393004_
City, State, Zip _Denver, CO 80239_

Mail

Legal

U.S. DISTRICT COURT
Office of the Clerk
901-19th Street, Room A 105
Denver, CO 80294

US POSTAGE PITNEY BOWES

ZIP 80216
02 1M
0001368873OCT 30 2017
$ 002.03°

