IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02840-KHR

MARK JANNY,

      Plaintiff,

v.

JOHN GAMEZ, Community Parole Officer, Colorado Department of Corrections, in his individual capacity;
LORRAINE DIAZ DE LEON, Parole Supervisor, Colorado Department of Corrections, in her individual capacity;
JIM CARMACK, Director of The Program, Denver Rescue Mission in Fort Collins, in his individual capacity;
TOM KONSTANTY, Co-Director of The Program, Denver Rescue Mission in Fort Collins, in his individual capacity

      Defendants.

---

## DEFENDANTS JIM CARMACK AND TOM KONSTANTY'S MOTION TO DISMISS PLAINTIFF'S FOURTH AMENDED COMPLAINT

---

COMES NOW the Defendants, Jim Carmack and Tom Konstanty, by and through the undersigned, John P. Craver and Dmitry B. Vilner of White and Steele, P.C., and file this Motion to Dismiss Plaintiff Mark Janny's Fourth Amended Complaint under Fed. R. Civ. P. 12(b)(6), as follows:

### CERTIFICATE OF CONFERRAL

No conferral is necessary under D.C.Colo.L.CivR 7.1(b)(1) because this is a motion to dismiss under Fed. R. Civ. P. 12(b)(6), and because Plaintiff is an unrepresented prisoner.

## INTRODUCTION

Plaintiff brings this case under 42 U.S.C. § 1983 against Mr. Carmack and Mr. Konstanty because, he alleges, they made him participate in Christian programming while he was on parole and staying at the Denver Rescue Mission in Fort Collins (the "Rescue Mission"), a homeless shelter.  However, Plaintiff's Fourth Amended Complaint (the "Complaint")[1] fails to plausibly state that Mr. Carmack and Mr. Konstanty's conduct constituted state action such that they can be held liable under § 1983.  Consequently, this Court should dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6).

## PLAINTIFF'S FACTUAL ALLEGATIONS

Plaintiff alleges the following material facts in his Complaint to purportedly support his § 1983 claims against Mr. Carmack and Mr. Konstanty[2]:

- Plaintiff was paroled from prison on December 10, 2014.  [Doc. #66, p. 8, ¶ 2].  He was then arrested for a parole violation on December 30, 2014, released on January 2, 2015, and re-arrested on January 7, 2015.  [*Id.*, p. 8, ¶ 3].  He was ordered released back to parole on February 2, 2015, and actually released on February 3, 2015.  [*Id*, p. 8, ¶¶ 4-5].

- On February 3, 2015, Plaintiff was placed in "The Program" by parole officer John Gamez and his supervisor, Lorraine Diaz de Leon.  [*Id.*, p. 5].  It was a directive of Plaintiff's parole that he participate in The Program, and follow its "house rules."  [*Id.*].

---

[1] Plaintiff originally served Mr. Carmack and Mr. Konstanty with his Third Amended Complaint. Before Mr. Carmack and Mr. Konstanty could respond, Plaintiff moved to file a Fourth Amended Complaint.  This Court granted Plaintiff's motion, [Doc. # 93], and set a deadline of December 7, 2017 for the defendants to respond, [Doc. #94].

[2] For the purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), all well-pleaded allegations must be accepted as true.  *Pueblo de Jemez v. United States*, 790 F.3d 1143, 1171 (10th Cir. 2015).

Plaintiff was threatened with arrest and parole revocation if he did not participate in The Program.  [*Id.*].  Officers Gamez and Diaz de Leon refused to consider other alternatives, and Plaintiff was told he was being placed in The Program until he could be brought before the parole board.  [*Id.*, p. 9, ¶ 7].  Officer Gamez "made [Plaintiff] choose between prison or participating in Christian activities."  [*Id.*, p. 18, ¶ 43].

- The Program is a "Christian Faith Based Community Placement" which, in Plaintiff's formulation, is used by the Fort Collins Parole Branch Office "to rehabilitate and house parolees."  [*Id.*, p. 5; p. 11, ¶ 13].  Its house rules and activities are "Christian faith related" and include twice-weekly bible studies, daily prayer, daily chapel, church, and one-on-one religious counseling.  [*Id.*, p. 5; p. 12, ¶ 20].  Failure to participate in these programs would result in expulsion from The Program.  [*Id.*, p. 5].

- Plaintiff is an atheist.  [*Id.*].  He shared this fact with Mr. Carmack, Mr. Konstanty, and Officer Gamez.  [*Id.*].  On February 4, 2015, Mr. Carmack told Plaintiff that he could not discuss or share his atheist beliefs, or tell others that he was an atheist while he was in The Program.  [*Id.*, p. 5; p. 13, ¶ 24].

- Mr. Carmack called Officer Gamez regarding Plaintiff.  [*Id.*].  Mr. Carmack and Officer Gamez "decided [Plaintiff] had to stay in the Program despite [his] being an atheist." [*Id.*, p. 5; *see also* p. 13, ¶ 26].  If Plaintiff did not participate in The Program's Christian activities, or follow all the rules, his "parole would be violated."  [*Id.*, pp. 5-6].  Officer Gamez offered Plaintiff a choice between The Program, and jail.  [*Id.*, p. 9, ¶ 8].

- Mr. Carmack asked Officer Gamez to change Plaintiff's curfew, so "for practical purposes" Plaintiff could not leave the "facility" five days out of the week.  [*Id.*, p. 6].

Specifically, Plaintiff's curfew was to be changed to 4:30 p.m., rather than 9:00 p.m. or 10:00 pm.  [*Id.*, pp. 13-14, ¶ 27].  His freedom to leave the facility was curtailed because he was an atheist.  [*Id.*, p. 6].

- Plaintiff was not allowed to get a job.  [*Id.*, p. 6; pp. 13-14, ¶ 27].  Specifically, on February 3, 2015, Plaintiff was told by his prior employer, James Storer of Muscle 4 Hire, that Plaintiff should "come into work that Friday."  [*Id.*, p. 17, ¶ 42].  But Plaintiff told Mr. Storer that his "Parole officer would not let [him] have a job."  [*Id.*].  Plaintiff was not rehired because he was considered unreliable.  [*Id.*].

- Mr. Carmack told Plaintiff that he (Mr. Carmack) was "good friends" with Officer Gamez, and that Plaintiff was being accepted to The Program as a "guinea pig" as a favor to Officer Gamez.  [*Id.*, p. 14, ¶ 28].  Mr. Carmack drove Plaintiff to Officer Gomez's office on February 4, 2015, during which Mr. Carmack "complained" about Plaintiff's attitude and feared that he would not be a good participant.  [*Id.*, pp. 14-15, ¶ 29].  During the meeting, Mr. Carmack requested that Plaintiff's electronic monitoring curfew be changed from a later time (between 7 and 9 p.m.) to 4:30 p.m.  [*Id.*].  Officer Gamez agreed with Mr. Carmack.  [*Id.*].

- Due to the earlier curfew, Plaintiff was put in the position that Mr. Carmack could force him to return to the shelter in time for chapel.  [*Id.*, p. 15, ¶ 30].  Plaintiff was also "forced" to attend two Christian bible studies led by Mr. Konstanty.  [*Id.*, p. 15, ¶ 31].  He was further supposed to attend daily prayer, chapel, and "forced labor," and was reprimanded by Mr. Carmack and Mr. Konstanty when he did not attend.  [*Id.*, p. 15, ¶ 32].  One time, he missed a meal because he was being reprimanded.  [*Id.*].

- On February 5, 2015, Mr. Carmack "summoned" Plaintiff to his office "for an apparent attempt to convert [Plaintiff] to Christianity."  [*Id.*, p. 15, ¶ 33].

- On February 8, 2015, Mr. Carmack told Plaintiff that if Plaintiff broke any more rules, Plaintiff would be kicked out.  [*Id.*, p. 16, ¶ 34].  Plaintiff refused to attend chapel that day.  [*Id.*].  Ultimately, Plaintiff was "kicked out of The Program on Feb[ruary] 8th, 2015 for being uncooperative and breaking the rules."  [*Id.*, p. 6].

- Officer Gamez "did no independent investigation of what happened at The Program." [*Id.*, p. 19, ¶ 46].

## FED. R. CIV. P. 12(B)(6) STANDARD

In order to survive a motion to dismiss, a plaintiff's claim must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)  "The concept of 'plausibility' at the dismissal stage refers not to whether the allegations are likely to be true; the court must assume them to be true.  The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." *Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1191-92 (10th Cir. 2009) (citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)).

Accordingly, "[a] plaintiff must 'nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss.'"  *Khalik v. United Airlines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Twombly*, 550 U.S. at 570).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts

5

which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 663.  The *Iqbal* evaluation requires two prongs of analysis.  First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory.  *Id*. at 680-81.  Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief."  *Id*. at 681.  If the allegations state a plausible claim for relief, the claim survives the motion to dismiss.  *Id*. at 679.

The court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 663.

## ARGUMENT

### A.  Plaintiff's Complaint Should Be Dismissed Because Plaintiff Fails to Allege that Mr. Carmack and Mr. Konstanty Were Acting under Color of State Law

This Court should dismiss Plaintiff's claim because Plaintiff cannot plausibly allege that either Mr. Carmack or Mr. Konstanty were acting under color of state law during the time period that Plaintiff stayed at the Rescue Mission.

The Complaint characterizes The Program as a "Christian Faith Based Community Placement."  [Doc. #66, p. 5].  Plaintiff does not (and cannot) allege that The Program is run by the government.  Mr. Carmack and Mr. Konstanty, who allegedly supervise and lead "Christian Activities" within The Program, are therefore private actors by definition.  [*Id.*, p. 6]; *see*

*Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1446 (10th Cir. 1995) (§ 1983 establishes a dichotomy between government action and private action).

For a private actor to be held liable under § 1983, he or she must act under color of state law. *Gallagher*, 49 F.3d at 1446. "[M]erely private conduct, no matter how discriminatory or wrongful," cannot provide the grounds for a claim brought under § 1983. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation marks omitted). "A plaintiff asserting that a private actor deprived him of a constitutional right while acting under of color of state law must rely on more than conclusory allegations to state such a cause of action, but must include in his complaint 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Gross v. Samudio*, 630 F. App'x 772, 777 (10th Cir. 2015).

Because the application of this doctrine is "'one of the more slippery and troublesome areas of civil rights litigation,'" the Tenth Circuit takes a "flexible approach" and applies four separate tests—the nexus test, the symbiotic relationship test, the joint activity test, and the public functions test—to determine whether a private entity is a state actor under § 1983. *Gallagher*, 49 F.3d at 1447 (quoting *Int'l Soc'y for Krishna Consciousness, Inc. v. Air Canada*, 727 F.2d 253, 255 (2d Cir. 1984)).

> Under the nexus test, a plaintiff must demonstrate that "there is a sufficiently close nexus" between the government and the challenged conduct such that the conduct "may be fairly treated as that of the State itself." Under this approach, a state normally can be held responsible for a private decision "only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State."

*Id*. (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). The symbiotic relationship test looks at "whether the state has 'so far insinuated itself into a position of

interdependence' with the private party, that there is a 'symbiotic relationship' between them." *Id*. (quoting *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961)).  Under the joint action test, "if a private party is 'a willful participant in joint activity with the State or its agents' then state action is present."  *Id*.  (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)).  Finally, under the public functions test, "a private entity that exercises 'powers traditionally exclusively reserved to the State' is engaged in state action."  *Id*. (quoting *Jackson*, 419 U.S. at 352).

Here, neither Mr. Carmack nor Mr. Konstanty satisfies any of these four tests.

### 1.     Mr. Carmack and Mr. Konstanty Are Not State Actors under the Nexus Test

First, Mr. Carmack and Mr. Konstanty are not state actors under the nexus test.  For a private party to qualify as a state actor under the nexus test, it must "exercise[] sufficient 'coercive power' over the challenged action."  *Wittner v. Banner Health*, 720 F.3d 770, 775 (10th Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)).  For example, mere state regulation of, or financial assistance to, a private hospital does not entail state action so long as the challenged decision is made at the discretion of a private actor.  *See id.*; *see also Pino v. Higgs*, 75 F.3d 1461, 1466 (10th Cir. 1996) (concluding that doctor's decision to certify plaintiff for a short-term mental health hold was not state action because state did not pressure or coerce doctor into making his decision, even though doctor acted in a way allowed by statute).  As the Court noted in *Wittner*, "Colorado has no ability to force, compel, or even encourage a private facility to admit anyone."  720 F.3d at 776.

Here, Plaintiff cannot show that the state exercised sufficient "coercive power" over Mr. Carmack and Mr. Konstanty to satisfy the nexus test.  As Plaintiff's Complaint makes clear, the

Rescue Mission is a homeless shelter that provides Christian programming, including daily prayer, bible study, and chapel services to people staying there.  [#66, p. 5; p. 12, ¶ 20].  The Rescue Mission administered The Program, not the state.  [*Id.*, p. 5].  Under Colorado law, Plaintiff's parole officers had "no ability to force, compel, or even encourage a private facility to admit anyone."  *See Wittner*, 720 F.3d at 776.  Indeed, the Complaint alleges that Mr. Carmack, not Officers Gamez or Diaz de Leon, ultimately decided to expel Plaintiff from the Rescue Mission.  [#66, p. 16, ¶ 34].  Accordingly, because the Rescue Mission ultimately retained discretion over their admissions and administration of the Program, there is an insufficient nexus to find state action by Mr. Carmack and Mr. Konstanty.

### 2.    Mr. Carmack and Mr. Konstanty Are Not State Actors under the Symbiotic Relationship Test

Next, Mr. Carmack and Mr. Konstanty are not state actors under the symbiotic relationship test.  This test asks "whether and to what extent the state's relationship with the private actor goes beyond the 'mere private [purchase] of contract services.'"  *Wittner*, 720 F.3d at 778 (quoting *Brentwood*, 531 U.S. at 299).  While "[p]ayments under government contracts and the receipt of government grants and tax benefits are insufficient to establish a symbiotic relationship between the government and a private entity. . . a public-private relationship can transcend that of mere client and contractor if the private and public actors have sufficiently commingled their responsibilities."  *Id.* (internal quotations and citation omitted).  In the medical context, where the state does not extensively participate in patient care, does not draw up detailed contracts, and does not dictate the content of the medical program, there is no symbiotic relationship.  *Id.* at 779.

Here, there is no symbiotic relationship between the state on the one hand, and Mr. Carmack and Mr. Konstanty on the other. At most, Plaintiff alleges that Officer Gamez corresponded with Mr. Carmack about placing Plaintiff in The Program until Plaintiff could be brought before the parole board. [#66, p. 5; p. 9, ¶ 7]. Plaintiff does not allege that the state had a contract with Mr. Carmack and Mr. Konstanty, or that it dictated the contents of The Program. *See Wittner*, 720 F.3d at 779. Nor does Plaintiff allege that Mr. Carmack or Mr. Konstanty were compelled to accept Plaintiff into the program. Thus, because Plaintiff cannot show that the state and private "sufficiently commingled their responsibilities," *id.* at 778, Mr. Carmack and Mr. Konstanty are not state actors under the symbiotic relationship test.

### 3. Mr. Carmack and Mr. Konstanty Are Not State Actors under the Joint Action Test

Mr. Carmack and Mr. Konstanty are also not state actors under the joint action test. The joint action test asks "whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Gallagher*, 49 F.3d at 1453. A plaintiff must show the existence of "a single plan, the essential nature and general scope of which was known to each person who is to be held responsible for its consequences." *Snell v. Tunnell*, 920 F.2d 673, 702 (10th Cir. 1990). "Action taken by private entities with the mere approval or acquiescence of the State is not state action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999); *see also Wittner*, 720 F.3d at 778-79 (concluding that state's decision to allow mental health facility to hold plaintiff was an act of acquiescence to private decision-making); *see also Vaughn v. Phoenix House Programs of New York*, No. 14-CV-3918 RA, 2015 U.S. Dist. LEXIS 129275, at *5 (S.D.N.Y. Sept. 25, 2015) (dismissing claim against drug treatment program where

its "sole function was to provide drug treatment and . . . the terms of that treatment were not directed, monitored, or significantly encouraged by the [State]").

"In applying the joint action test, the Tenth Circuit has approved adopting the requirements for establishing a conspiracy under § 1983." *Schneider v. Elaine Cooper, L.P.C.*, No. 08-cv-01856-REB-KMT, 2009 U.S. Dist. LEXIS 125017, at *23 (D. Colo. Dec. 16, 2009) (citing *Gallagher*, 49 F.3d at 1447). "To prove a conspiracy between private parties and the state under Section 1983, the plaintiff must show a joint participation, agreement, or 'meeting of the minds' to violate constitutional rights." *Id.* (quoting *Aly v. Rocky Mountain Holding, L.L.C.*, 203 F.3d 834 (10th Cir. 2000)).

Here, neither Mr. Carmack nor Mr. Konstanty's conduct plausibly constitutes state action under the joint action test. In this case, Plaintiff alleges that Mr. Carmack decided with Officer Gamez that Plaintiff should stay in The Program, despite Plaintiff's atheist beliefs, as a "favor" to Officer Gamez. [#66, p. 5; p. 13, ¶ 26; p. 14, ¶ 28]. Mr. Carmack also asked Officer Gamez to modify Plaintiff's curfew, a request which Officer Gamez apparently granted. [*Id.*, pp. 14-15, ¶ 29]. At one point, Mr. Carmack "complained" to Officer Gamez that Plaintiff was not a good participant in The Program. [*Id.*]. Ultimately, within a week of Plaintiff joining The Program, and as a result of numerous rules violations, Mr. Carmack kicked him out. [*Id.*, p. 6]. These allegations, even if taken as true, do not plausibly allege joint action between Mr. Carmack and the state. At most, Officer Gamez referred Plaintiff to The Program and acquiesced to Plaintiff participating in its religious instruction. *See Sullivan*, 526 U.S. at 52. It was Mr. Carmack, not the State, that allegedly required Plaintiff to participate in specific religious programming, and it was Mr. Carmack, not the State, that made the decision to expel Plaintiff from the Program. The

fact that Mr. Carmack consulted with Officer Gamez while Plaintiff was in The Program does not transform Mr. Carmack's conduct into state action.  *See Weaver v. James Bonding Co., Inc.*, 442 F. Supp. 2d 1219, 1227 (S.D. Ala. 2006) ("There do not appear to be any cases holding that simply getting a state's permission to act transforms a private party into a state actor for § 1983 liability.").

Most importantly, Plaintiff alleges that Officer Gamez "did no independent investigation of what happened at The Program."  [*Id.*, p. 19, ¶ 46].  This allegation makes it impossible for Mr. Carmack and Officer Gamez to have formulated "a single plan, the essential nature and general scope of which was known to each person who is to be held responsible for its consequences."  *See Snell*, 920 F.2d at 702.  Therefore, under these circumstances, Plaintiff's Complaint fails to plausibly allege facts showing a "meeting of the minds" such that Officer Gamez and Mr. Carmack conspired to violate Plaintiff's constitutional rights.

Finally, Mr. Konstanty is alleged only to have led two Bible study classes in which Plaintiff participated.  [*Id.*, p. 15, ¶ 31].  There is no allegation that Mr. Konstanty ever interacted with Officer Gamez or another representative of the State. [3]  Thus, the Complaint fails to state a plausible claim for relief against Mr. Konstanty as well.

### 4.      Mr. Carmack and Mr. Konstanty Are Not State Actors under the Public Function Test

Finally, Mr. Carmack and Mr. Konstanty are not state actors under the public function test.  The public function test "'is difficult to satisfy.   While many functions have been

---

[3] Plaintiff does allege, in a single sentence, that Officer Gamez, Mr. Carmack, and Mr. Konstanty "would not allow [him] to work."  [*Id.*, p. 17, ¶ 42].  However, this cursory allegation is the type of "bare assertion" that this Court may disregard in determining the plausibility of Plaintiff's Complaint.  *See Iqbal*, 556 U.S. at 680-61

traditionally performed by governments, very few have been exclusively reserved to the State.'" *Wittner*, 720 F.3d at 777 (quoting *Gallagher*, 49 F.3d at 1456) (concluding that involuntary commitment of the mentally ill has "never been an exclusively public function"). "The provision of transitional housing to former inmates under parole supervision is not a function that has traditionally been the exclusive prerogative of the state." *Byng v. Delta Recovery Servs., LLC*, No. 6:13-CV-733 MAD/ATB, 2013 U.S. Dist. LEXIS 105606, at *9 (N.D.N.Y. July 29, 2013), *aff'd*, 568 F. App'x 65, 66 (2d Cir. 2014). Courts, including the Tenth Circuit, have repeatedly held that attendance at various treatment programs as a condition of parole does not constitute state action. *See Gross*, 630 F. App'x at 778 (dismissing claim against sex offender treatment program parolee was ordered to attend); *Byng*, 568 F. App'x at 66 (affirming dismissal of claims against residential substance abuse program plaintiff parolee was ordered to attend); *Smith v Devline*, 239 F. App'x 735, 737 (3d Cir. 2007) (same); *Justice v. King*, No. 08-CV-6417-FPG, 2015 U.S. Dist. LEXIS 39555, at *19 (W.D.N.Y. 2015) (collecting district court cases in the Second Circuit).

Here, Mr. Carmack and Mr. Konstanty, as employees of a non-profit religious organization that provides services to homeless individuals, do not perform a function "exclusively reserved to the State." *See Byng*, 2013 U.S. Dist. LEXIS 105606, at *9. Accordingly, they are not state actors under the public functions test.

## CONCLUSION

Because Mr. Carmack and Mr. Konstanty did not act under color of state law, Plaintiff fails to state a claim under § 1983 against them. Accordingly, Plaintiff's Fourth Amended Complaint should be dismissed with prejudice under Fed. R. Civ. P. 12(b)(6).

Respectfully submitted this 7th day of December, 2017.

  s/ John P. Craver
John P. Craver
Dmitry B. Vilner
White and Steele, P.C.
Dominion Towers, North Tower
600 17th Street, Suite 600N
Denver, Colorado 80202-5406
Telephone:  (303) 296-2828
jcraver@wsteele.com
dvilner@wsteele.com
Attorneys for Defendants Jim Carmack
and Tom Konstanty

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 7, 2017, I electronically filed the foregoing, **DEFENDANTS JIM CARMACK AND TOM KONSTANTY'S MOTION TO DISMISS PLAINTIFF'S FOURTH AMENDED COMPLAINT**, with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses and/or placed in the U.S. mail, postage prepaid, and/or sent via email addressed to the following:

Mark Janny, #150344
Limon Correctional Facility
49030 State Highway 71 South
Limon, Colorado 80826
*Pro Se Plaintiff*

John A. VanLandschoot, Esq.
Colorado Attorney General's Office
Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, Colorado 80203
John.vanlandschoot@coag.gov
*Attorneys for Defendants Gamez and Diaz de Leon*

s/ Dawn Ross
White and Steele, P.C.
Dominion Towers, North Tower
600 17th Street, Suite 600N
Denver, CO 80202-5406
Telephone:  303-296-2828
Facsimile:     303-296-3131