IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02840-RM-SKC

MARK JANNY,

      Plaintiff,

v.

JOHN GAMEZ, Community Parole Officer, Colorado Department of Corrections, in his individual capacity;
LORRAINE DIAZ DE LEON, Parole Supervisor, Colorado Department of Corrections, in her individual capacity;
JIM CARMACK, Director of The Program, Denver Rescue Mission in Fort Collins, in his individual capacity;
TOM KONSTANTY, Co-Director of The Program, Denver Rescue Mission in Fort Collins, in his individual capacity

      Defendants.

_____

**DEFENDANTS JIM CARMACK AND TOM KONSTANTY'S MOTION FOR SUMMARY JUDGMENT**

_____

COMES NOW the Defendants, Jim Carmack and Tom Konstanty, by and through the undersigned, John P. Craver of White and Steele, P.C., and file this Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56, as follows:

## <u>CERTIFICATE OF CONFERRAL</u>

Pursuant to Local Civil Rule 7.1(b)()1), Defendants Carmack and Konstanty are not required to confer with Plaintiff because he is an unrepresented prisoner. Co-Defendant Gamez is not an opposing party for purposes of Rule 7.1.

## I.  INTRODUCTION

Plaintiff brings this case under 42 U.S.C. § 1983 against Mr. Carmack and Mr. Konstanty because, he alleges, they made him participate in Christian programming while he was on parole and staying at the Denver Rescue Mission in Fort Collins (the "Rescue Mission"), a homeless shelter.  However, Plaintiff has not established any evidence throughout this litigation to suggest, let alone prove his allegations that Mr. Carmack and Mr. Konstanty's conduct constituted state action such that they can be held liable under § 1983.  Consequently, this Court should enter summary judgment in Defendants Carmack and Konstanty's favor and dismiss Plaintiff's claims against them pursuant to Fed. R. Civ. P. 56.

## II.  STATEMENT OF UNDISPUTED FACTS

1.     Plaintiff was paroled from prison on December 10, 2014.  **Fourth Amended Prisoner Complaint, Doc.** #66, p. 8, ¶ 2.  He was then arrested for a parole violation on December 30, 2014, released on January 2, 2015, and re-arrested on January 7, 2015.  *Id.*, p. 8, ¶ 3.  He was ordered released back to parole on February 2, 2015, and actually released on February 3, 2015.  *Id*, p. 8, ¶¶ 4-5.

2.     As a condition of his parole, Plaintiff had to establish residence in a location approved by his parole officer, Defendant John Gamez. **Exhibit A, Parole Directive dated December 10, 2014.**  Upon release, Plaintiff attempted to establish residency at a friend's home located in Loveland, Colorado.  This residence was not approved by Officer Gamez. **Exhibit B, Plaintiff's Dep. 85:6-15.**

3.     On February 3, 2015, Plaintiff was placed at the Denver Rescue Mission in Fort Collins, Colorado by parole officer John Gamez.  **Exhibit C, Parole Directive dated February**

2

**3, 2015.**  Plaintiff was required to establish residence at the Rescue Mission and "abide by all house rules as established."  ***Id*.; Exhibit B,** 55:3-8.

4.     Officer Gamez's intent was to place Plaintiff at the Rescue Mission in order to satisfy condition # 2 of Plaintiff's Parole Order dated November 24, 2014. **Exhibit A; Exhibit D**, **Gamez Responses to Plaintiff's Combined Discovery,** p. 2.

5.     The Rescue Mission had complete discretion over who it allowed to reside in its facility and who it allowed to participate in its programs.  **Exhibit E, Carmack Affidavit, ¶** 3.

6.     The Rescue Mission would, on occasion, accept parolees as residents and/or program participants.  **Exhibit F,** Rescue **Mission Discovery Responses,** p. 13.  However, the Rescue Mission and the state were not engaged in any contract, written or implied, which required the Rescue Mission to accept individuals as requested by the state, or be subject to any control by the state with respect to the individual parolees it did accept into its program. **Exhibit E, ¶** 7.

7.     The Rescue Mission was not forced by the State to accept Plaintiff as a resident. **Exhibit E, ¶** 6.

8.     Plaintiff's failure to comply with the parole directive would constitute a violation of his parole agreement, and lead to the revocation of his parole. **Exhibits A, C; Exhibit B,** 55:3-9.

9.     The Rescue Mission is a Christian Based Transitional Community that provides housing services in addition to various programs including the Steps to Success program, emergency shelter services and agency referrals.  **Exhibit G, Transitional Community Application.**  The Rescue Mission operated a program known as "Steps to Success" in its Fort

Collins location also referred to as "the Program." The Program is a "Christian Faith Based Community Placement" which uses more accountability to provide men and women help to become productive, self-sufficient citizens." **Exhibit G,** p.1. Participants in the program are expected to attend chapel and bible study, observe dorm style rules, including observing curfews, set meal times, and are not allowed to consume drugs or alcohol while in the program. *Id.*, p. 6.

10. At no time relevant to this matter did Mr. Konstanty interact with Officer Gamez or another parole officer regarding Plaintiff. **Exhibit B**, 102:14-25; 103: 1-24; **Exhibit H, Konstanty Affidavit**, ¶ 3

11. A key goal of the Program was obtaining a job. **Exhibit E**, ¶ 5. Therefore, any work related necessity would take precedence over scheduled program activities at the Rescue Mission. **Exhibit F**, p. 10-11. If an individual did not have a job, they would be expected to help with chores including cleaning or meal prep assistance. *Id*. While a resident of the Rescue Mission, Plaintiff did not have a job. **Exhibit B**, 84:5-14.

12. Plaintiff resisted participation in the program including the religious programming, chores and dorm style rules. *Id.,* 106:6-17; 109:5-11.

13. On February 7 or 8, 2015, Plaintiff was told by Defendant Carmack that if he broke any additional rules he would be kicked out of the program. **Exhibit B,** 105:19-22.

14. Plaintiff refused to attend chapel on February 8, 2015. **Exhibit B,** 109: 4-14. As a result of Plaintiff not following the rules, Defendant Carmack asked Plaintiff to leave the Rescue Mission that day. *Id.*, 111:13-21.

15.     Plaintiff was expelled from the Denver Rescue Mission on February 8, 2015.  *Id.*, 109:4-16.

16.     The Rescue Mission and the State were not engaged in any contract, written or implied, which required the Rescue Mission to accept individuals as requested by the State, or be subject to any control by the State with respect to the individual parolees it did accept into its program.  **Exhibit I**, **Meuli Affidavit**, ¶ 4.  Further, the State did not dictate any terms of the Rescue Mission's programming.  *Id.*, ¶ 3.  The various programs, including Steps to Success, are entirely managed and operated by the Rescue Mission itself, without any input or guidance from the State.  *Id.*

17.     Its program participants and residents include some parolees, but also a substantial non-incarcerated population such that the Rescue Mission would not cease to operate or manifestly change its operations if the occasional referral of parolees by Officer Gamez and other corrections officers stopped. *Id.*, ¶ 5.

### III.  LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Koch v. City of Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011).  The movant bears the initial burden of showing an absence of evidence to support the non-movant's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325).  "The nonmoving party may not rest solely on the allegations

in the pleadings but must instead designate 'specific facts showing that there is a genuine issue for trial.'"  *Anglin v. City of Aspen*, 552 F. Supp. 2d 1229, 1239 (quoting *Celotex*, 477 U.S. at 324).

## IV.  LEGAL ARGUMENT

### A.    Mr. Carmack and Mr. Konstanty Were Not Acting under Color of State Law

This Court should grant summary judgment in favor of the Rescue Mission Defendants on Plaintiff's claims against them because there is no genuine dispute of material fact that the Rescue Mission Defendants were not acting under color of state law during the time period that Plaintiff stayed at the Rescue Mission.  Therefore, Plaintiff's claims based on § 1983 against the Rescue Mission Defendants fail as a matter of law.

The Rescue Mission is a Christian Based Transitional Community that provides housing services in addition to various programs including the Steps to Success program, emergency shelter services and agency referrals. Plaintiff does not (and cannot) establish that The Program is run by the government, or on behalf of the government.  Mr. Carmack and Mr. Konstanty, who supervise and lead the Program, which admittedly has Christian components, are therefore private actors by definition.  *see Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1446 (10th Cir. 1995) (§ 1983 establishes a dichotomy between government action and private action).

For a private actor to be held liable under § 1983, he or she must act under color of state law.  *Gallagher*, 49 F.3d at 1446.  "[M]erely private conduct, no matter how discriminatory or wrongful," cannot provide the grounds for a claim brought under § 1983.  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation marks omitted).

> Because the application of this doctrine is "'one of the more slippery and troublesome areas of civil rights litigation,'" the Tenth Circuit takes a "flexible approach" and applies four separate tests—the nexus test, the symbiotic relationship test, the joint activity test, and the public functions test—to determine whether a private entity is a state actor under § 1983. *Gallagher*, 49 F.3d at 1447 (quoting *Int'l Soc'y for Krishna Consciousness, Inc. v. Air Canada*, 727 F.2d 253, 255 (2d Cir. 1984)).  Under the nexus test, a plaintiff must demonstrate that "there is a sufficiently close nexus" between the government and the challenged conduct such that the conduct "may be fairly treated as that of the State itself." Under this approach, a state normally can be held responsible for a private decision "only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State."

*Id.*  (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). The symbiotic relationship test looks at "whether the state has 'so far insinuated itself into a position of interdependence' with the private party, that there is a 'symbiotic relationship' between them." *Id.*  (quoting *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961)).  Under the joint action test, "if a private party is 'a willful participant in joint activity with the State or its agents' then state action is present."  *Id.*  (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)).  Finally, under the public functions test, "a private entity that exercises 'powers traditionally exclusively reserved to the State' is engaged in state action."  *Id.* (quoting *Jackson*, 419 U.S. at 352).  Here, neither Mr. Carmack nor Mr. Konstanty as representatives of the Rescue Mission satisfy any of these tests.

**1.  Mr. Konstanty is Not a State Actor for Purposes of Plaintiff's § 1983 Claim**

There is no dispute that Mr. Konstanty and Officer Gamez did not engage in any concerted action sufficient to establish a § 1983 claim.  Plaintiff does not allege, and there have been no facts established through discovery to even suggest that Mr. Konstanty interacted with

Officer Gamez or another parole officer regarding Plaintiff.  **Exhibit B**, 102:14-25; 103: 1-24;

**Exhibit H,** Konstanty Affidavit, ¶ 3.  At most, it appears that Mr. Konstanty may have oriented

Plaintiff on the Rescue Mission's house rules, and that Mr. Konstanty may have led two Bible

study courses which Plaintiff claims to have attended, albeit unwillingly.  *See,* Doc. #95, ¶¶ 24,

31. Accordingly, before delving into the nuances of the joint action test, this Court should find

that no genuine dispute as to any material fact exists with respect to Mr. Konstanty's lack of

involvement in or interaction with Officer Gamez regarding Plaintiff's time at the Rescue

Mission, and enter summary judgment in Mr. Konstanty's favor in this matter.

### 2.  Mr. Carmack and Mr. Konstanty Are Not State Actors under the Nexus Test

Notwithstanding the above discussion of Mr. Konstanty's lack of involvement in

Plaintiff's residency at the Rescue Mission, Mr. Carmack and Mr. Konstanty are not state actors

under the nexus test.  For a private party to qualify as a state actor under the nexus test, it must

"exercise sufficient 'coercive power' over the challenged action."  *Wittner v. Banner Health*, 720

F.3d 770, 775 (10th Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic

Ass'n*, 531 U.S. 288, 296 (2001)).  For example, mere state regulation of, or financial assistance

to, a private hospital does not entail state action so long as the challenged decision is made at the

discretion of a private actor.  *See id.*; *see also Pino v. Higgs*, 75 F.3d 1461, 1466 (10th Cir. 1996)

(concluding that doctor's decision to certify plaintiff for a short-term mental health hold was not

state action because state did not pressure or coerce doctor into making his decision, even though

doctor acted in a way allowed by statute).  As the Court noted in *Wittner*, "Colorado has no

ability to force, compel, or even encourage a private facility to admit anyone."  720 F.3d at 776.

Here, no evidence exists to support Plaintiff's claim that the state exercised sufficient "coercive power" over Mr. Carmack and Mr. Konstanty to satisfy the nexus test.  In fact, the State had no power, formal or otherwise, over the Rescue Mission.  The Rescue Mission is a homeless shelter that provides Christian programming, including daily prayer, bible study, and chapel services to people staying there. The Rescue Mission administered The Program, not the state. **Exhibit I**, Meuli Affidavit, ¶ 3.  Consistent with Colorado law, the Rescue Mission had complete discretion over who it allowed to reside in its facility and over who it allowed to participate in its programs, including the Steps to Success Program ("Program"), and the overnight homeless shelter. *See, Wittner*, 720 F.3d at 776; **Exhibit E, ¶ ¶** 3-4.  With respect to Plaintiff's brief residence, the Rescue Mission was not compelled or forced by Defendant Gamez or any other Colorado Department of Corrections or other State agency employee to accept Mr. Janney as a resident.  *Id.*, ¶ 6. Indeed, it was Mr. Carmack, not Officers Gamez or Diaz de Leon, who ultimately decided to expel Plaintiff from the Rescue Mission. **Exhibit B,** 109:4-16. Accordingly, because the Rescue Mission ultimately retained discretion over their admissions and administration of the Program, there is an insufficient nexus to find state action by Mr. Carmack and Mr. Konstanty.

### 3. Mr. Carmack and Mr. Konstanty Are Not State Actors under the Symbiotic Relationship Test

Next, Mr. Carmack and Mr. Konstanty are not state actors under the symbiotic relationship test.  This test asks "whether and to what extent the state's relationship with the private actor goes beyond the 'mere private [purchase] of contract services.'"  *Wittner*, 720 F.3d at 778 (quoting *Brentwood*, 531 U.S. at 299).  While "[p]ayments under government contracts and the receipt of government grants and tax benefits are insufficient to establish a symbiotic

relationship between the government and a private entity. . . a public-private relationship can transcend that of mere client and contractor if the private and public actors have sufficiently commingled their responsibilities." *Id.* (internal quotations and citation omitted). In the medical context, where the state does not extensively participate in patient care, does not draw up detailed contracts, and does not dictate the content of the medical program, there is no symbiotic relationship. *Id.* at 779. Conversely, a symbiotic relationship does exist where the private entity is private in name only, but otherwise so entwined with the state that it would be unrecognizable without the state involvement. *Brentwood,* at 290 (Where the majority of membership of a private organization was made up of public schools, the Court held that there would be no recognizable private association without the public school officials, who "overwhelmingly determine and perform all but the Association's purely ministerial acts.")

Here, there is no symbiotic relationship between the state on the one hand, and Mr. Carmack and Mr. Konstanty on the other. At most, on occasion, the Rescue Mission, via Defendant Carmack, would accept parolees as residents and/or program participants. However, the Rescue Mission and the State were not engaged in any contract, written or implied, which required the Rescue Mission to accept individuals as requested by the State, or be subject to any control by the State with respect to the individual parolees it did accept into its program. **Exhibit I**, Meuli Affidavit, ¶ 4. Further, the State did not dictate any terms of the Rescue Mission's programming. *Id.* ¶ 3. The various programs, including Steps to Success, are entirely managed and operated by the Rescue Mission itself, without any input or guidance from the State. *Id.* Its program participants and residents include some parolees, but also a substantial non-incarcerated population such that the Rescue Mission would not cease to operate or manifestly change its

operations if the occasional referral of parolees by Officer Gamez and other corrections officers stopped. *Id.*, ¶ 5. Thus, because the State and Rescue Mission did not "sufficiently commingle their responsibilities," Mr. Carmack and Mr. Konstanty are not state actors under the symbiotic relationship test. *See, Wittner*, 720 F.3d at 778.

### 4. Mr. Carmack and Mr. Konstanty Are Not State Actors under the Joint Action Test

Mr. Carmack and Mr. Konstanty are not state actors under the joint action test. The joint action test asks "whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Gallagher*, 49 F.3d at 1453. A plaintiff must show the existence of "a single plan, the essential nature and general scope of which was known to each person who is to be held responsible for its consequences." *Snell v. Tunnell*, 920 F.2d 673, 702 (10th Cir. 1990). "Action taken by private entities with the mere approval or acquiescence of the State is not state action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999); *see also Wittner*, 720 F.3d at 778-79 (concluding that state's decision to allow mental health facility to hold plaintiff was an act of acquiescence to private decision-making); *see also Vaughn v. Phoenix House Programs of New York*, No. 14-CV-3918 RA, 2015 U.S. Dist. LEXIS 129275, at *5 (S.D.N.Y. Sept. 25, 2015) (dismissing claim against drug treatment program where its "sole function was to provide drug treatment and . . . the terms of that treatment were not directed, monitored, or significantly encouraged by the [State]"). A decision made by a private party, based on judgments by private parties without standards established by the state, though approved by a state entity, does not constitute state action. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52-53 (1999) (citing *Blum v. Yaretsky*, 457 U.S. 991, 1004-1005 (1982)).

Here, Plaintiff cannot show the existence of any such action. No admissible evidence exists, let alone has been produced, in support of his claims that the Rescue Mission Defendants acted in concert with the state to deprive him of a constitutional right.

### a. Mr. Carmack and Mr. Konstanty did not engage in joint action with the state according to the requirements for establishing a conspiracy

In applying the joint action test, "some courts have adopted the requirements for establishing a conspiracy under Section 1983. These courts conclude that [a] requirement of the joint action charge . . . is that both public and private actors share a common, unconstitutional goal." *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1454 (10th Cir. 1995) (internal citations omitted). "To demonstrate the existence of a conspiratorial agreement it simply must be shown that there was 'a single plan, the essential nature and general scope of which [was] know to each person who is to be held responsible for its consequences.'" *Snell v. Tunnell*, 920 F.3d 673, 702 (10th Cir. 1990) (quoting *Hampton v. Hanrahan*, 600 F.2d 600, 621 (7th Cir. 1979)). There must be more than a meeting of the minds to achieve any goal to prove conspiracy between private parties and the state under Section 1983. "To prove a conspiracy…the plaintiff must show a joint participation, agreement, or 'meeting of the minds' to violate constitutional rights." *Id.* (quoting *Aly v. Rocky Mountain Holding, L.L.C.*, 203 F.3d 834 (10th Cir. 2000)) (emphasis added). In the section 1983 context, a plaintiff must demonstrate "that both public and private actors share a common unconstitutional goal." *Anaya*, 195 F.3d at 596.

Here, the Magistrate Judge determined that Plaintiff's Fourth Amended Complaint failed to plausibly allege the existence of a common, unconstitutional goal between Officer Gamez and the Mr. Carmack. *See,* Doc. # 110, p. 12-15. Now, at the summary judgment phase, Plaintiff

similarly cannot establish the existence of such a common unconstitutional goal between the defendants.

As in *Gallagher*, the state (Officer Gamez) and alleged state actor (Mr. Carmack) did not share a common goal of effecting constitutional deprivations on Plaintiff.   Rather, Officer Gamez's intent was to place Plaintiff at the Rescue Mission in order to satisfy condition # 2 of Plaintiff's Parole Order dated November 24, 2014. **Exhibit D**, p. 2. This directive required Plaintiff establish a residence of record and remain at the residence of record each night.  *See,* **Exhibit C.**  Officer Gamez admitted to having only minimal knowledge of the Rescue Mission's rules and programming.   **Exhibit D**, p. 5. Thus, although Plaintiff alleges that the Rescue Mission's "house rules" involve various Christian activities, and that Officer Gamez directed him to follow these rules, Plaintiff does not (and cannot) prove that Officer Gamez and Mr. Carmack shared the same goal of converting Plaintiff to Christianity.  *See Gallagher*, 49 F.3d at 1453-55 (concluding that there was no state action where plaintiff failed to show that concert promoters and state university shared common goal to conduct unconstitutional pat-downs). Instead, Officer Gamez intended to place Plaintiff in a suitable environment where Plaintiff could satisfy the terms of his Parole Order. **Exhibit D,** p. 2.  Any reference to "house rules" in Plaintiff's Parole Order and the rules imposed by the Rescue Mission are coincidental.   For purposes of the Parole Order, "house rules" is a generic term that would be required of any parolee – to abide by whatever "house rules" are required of their residence of record.  **Exhibit D**, p. 11.  Officer Gamez merely acquiesced to the fact that this environment was a religious one with its own "house rules" that included Christian worship.   At no point did Officer Gamez suggest to Plaintiff or the Rescue Mission Defendants that he aimed to have Plaintiff supervised

in a religious capacity, or indoctrinated into any sort of religious beliefs. **Exhibit E, ¶** 10. Plaintiff also does not (and cannot) prove that the Rescue Mission Defendants shared any of Officer Gamez's goals.    Neither Mr. Carmack nor Mr. Konstanty had any discussion with Officer Gamez regarding the program's religious components generally or with respect to Plaintiff.  **Exhibit E**, ¶ 11.  Indeed, Plaintiff repeatedly claims that Mr. Carmack threatened to, and ultimately did, kick him out of The Program.   **Exhibit B**, 72:18-25; 73:1-2; 105:19-23; 109:4-16.  Expelling Plaintiff from The Program hardly seems congruent with Officer Gamez's alleged goal of placing Plaintiff in residence of record to satisfy his Parole Order.  For these reasons, there is no disputed issue of material fact regarding the absence of a conspiracy such that the Rescue Mission Defendants acted under color of state law.

> **b. There was no "substantial degree of cooperative action" between Officer Gamez and the Rescue Mission Defendants with respect to Plaintiff**

Other courts applying the joint action test have focused on whether there is a substantial degree of cooperation, or overt and significant cooperative action between the private and state entities to establish a joint action.   *See, Howerton v. Gabica,* 708 F.2d 380, 385 (9th Cir. 1983) (state action based on police intervention with private actor "at every step of eviction")*; Jackson v. Pantazes,* 810 F.2d 426 427-29 (4th Cir. 1987) (bail bondsman a state actor because he obtained significant aid from a police officer in the arrest of the plaintiff).

The Tenth Circuit has found that where there is an absence of concerted action "whether conspiracy, prearranged plan, customary procedure or policy" that substituted the judgment of a private party for that of a state actor, there is no joint action for purposes of maintaining a Section 1983 claim. *Carey v. Continental Airlines, Inc.*, 823 F.2d 1402 (10th Cir. 1987).  For instance, in *Murray v. Wal-Mart, Inc.*, 874 F.2d 555, 559 an alleged shoplifter was detained by

Walmart security. 874 F.2d at 557-58. The Eighth Circuit held that Walmart acted under color of state law because of the combination of (1) a state statute that authorized shopkeepers to detain suspected shoplifters; and (2) the uncritical assistance offered by police officers to Walmart, including arresting and prosecuting the plaintiff without conducting an "independent investigation" of the allegations against her. *Id.* at 559.

The facts here are different. First, no statute exists, like the shoplifter detention statute in *Murray*, that grants authority traditionally exercised by the state to the Rescue Mission Defendants. Second, the any absence of an independent investigation by Defendant Gamez is not connected to any cooperative action between him and the Rescue Mission Defendants, but instead concerned Officer Gamez's recommendation to the parole board that it revoke Plaintiff's parole. Doc. #95, ¶ 46; *see also Id.*, ¶ 49 (further alleging that Officer Gamez's "actual motivation for the arrest and revocation were my being kicked out of The Program on 2/8/15"). Thus, *Murray* is inapposite.

While Officer Gamez allegedly agreed to change Plaintiff's curfew at Mr. Carmack's request, this occurred *after* Plaintiff had already been placed as a resident at the Rescue Mission. Even if this request was made by the Rescue Mission Defendants, which Plaintiff cannot prove, Mr. Carmack has no memory of making such a request. Even more, the conduct was as Plaintiff alleges would further the goals of the Rescue Mission Defendants, not the State's. Thus, this conduct was, as argued above, mere acquiescence to Mr. Carmack, and not a significant cooperative action taken by both the Rescue Mission Defendants and Officer Gamez in furtherance of any joint goal or plan.

### c. The manner in which Plaintiff's alleged constitutional deprivation was carried out does not support the existence of state action.

Joint action may be found where the conduct of the private entity is "integral part of the deprivation" of this constitutional right. *Coleman v. Turpen,* 697 F.2d 1341 (10th Cir. 1982). The Rescue Mission Defendants' conduct was not an "integral part" of any alleged deprivation of rights by the state. *Turpen* involved a towing company that towed and stored the plaintiff's property following a police seizure of that property, and then sold that property while the plaintiff was on death row. *Id.* at 1343. The Tenth Circuit held that the towing company was acting under color of state law because the towing company jointly participated with the state in towing away the plaintiff's property. *Id.* Because the State had asserted a right in the property, the towing company was holding the truck for the State, not for the plaintiff. *Id.* Consequently, "[i]n allowing [the towing company] to sell the [property], the State thus deprived [the plaintiff] of his property in joint participation with [the towing company]." *Id.*

Here, unlike in *Turpen*, the Rescue Mission Defendants were not preaching Christianity to Plaintiff to further any goals of the State. **Exhibit E**, ¶ 10. Nor were they holding Plaintiff against his will to further the goals of the State. **Exhibit E**, ¶ 9. Rather, the Rescue Mission Defendants were providing a suitable address to rehabilitate Plaintiff, solely for the benefit of Plaintiff. Unlike in *Turpen,* the informal agreement to house Plaintiff at the Rescue Mission did not cloak the Rescue Mission Defendants in any authority of the State to take any action on its behalf. Also unlike in *Turpen*, where a private towing company was storing property that would otherwise be stored by the State, the Rescue Mission Defendants were not performing a state function (i.e. providing transitional housing to parolees) in lieu of Officer Gamez.

**5.  Mr. Carmack and Mr. Konstanty Are Not State Actors under the Public Function Test**

Finally, Mr. Carmack and Mr. Konstanty are not state actors under the public function test.  The public function test "'is difficult to satisfy.  While many functions have been traditionally performed by governments, very few have been exclusively reserved to the State.'" *Wittner*, 720 F.3d at 777 (quoting *Gallagher*, 49 F.3d at 1456) (concluding that involuntary commitment of the mentally ill has "never been an exclusively public function").  "The provision of transitional housing to former inmates under parole supervision is not a function that has traditionally been the exclusive prerogative of the state." *Byng v. Delta Recovery Servs., LLC*, No. 6:13-CV-733 MAD/ATB, 2013 U.S. Dist. LEXIS 105606, at *9 (N.D.N.Y. July 29, 2013), *aff'd*, 568 F. App'x 65, 66 (2d Cir. 2014).  Courts, including the Tenth Circuit, have repeatedly held that attendance at various treatment programs as a condition of parole does not constitute state action.  *See Gross*, 630 F. App'x at 778 (dismissing claim against sex offender treatment program parolee was ordered to attend); *Byng*, 568 F. App'x at 66 (affirming dismissal of claims against residential substance abuse program plaintiff parolee was ordered to attend); *Smith v Devline*, 239 F. App'x 735, 737 (3d Cir. 2007) (same); *Justice v. King*, No. 08-CV-6417-FPG, 2015 U.S. Dist. LEXIS 39555, at *19 (W.D.N.Y. 2015) (collecting district court cases in the Second Circuit).

Here, Mr. Carmack and Mr. Konstanty, as employees of a non-profit religious organization that provides services to homeless individuals, do not perform a function "exclusively reserved to the State."  *See Byng*, 2013 U.S. Dist. LEXIS 105606, at *9. Accordingly, they are not state actors under the public functions test.

## V. CONCLUSION

Mr. Carmack and Mr. Konstanty, as employees of a private entity, were not acting under the color of state law as determined by any of the four tests adopted by the courts with respect to Plaintiff's brief residence at the Rescue Mission.  The State had no control over the admissions or operations of the Rescue Mission, and the Rescue Mission did not sufficiently entwine its operations with that of the state.  Further, there was no conspiracy between the Rescue Mission Defendants and Officer Gamez to deprive Plaintiff of a constitutional right, the Defendants did not engage in a substantial degree of cooperative action, and at no time was the conduct of the Rescue Mission Defendants an integral part of the alleged deprivation of Plaintiff's rights.  Thus, Defendants Carmack and Konstanty did not act under color of state law, and Plaintiff's claims against the Rescue Mission Defendants fail as a matter of law.

Respectfully submitted this 31st day of October, 2019.

 s/ John P. Craver
John P. Craver
White and Steele, P.C.
Dominion Towers, North Tower
600 17th Street, Suite 600N
Denver, Colorado 80202-5406
Telephone:  (303) 296-2828
jcraver@wsteele.com
Attorneys for Defendants Jim Carmack
and Tom Konstanty

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 31, 2019 I electronically filed the foregoing, **DEFENDANTS JIM CARMACK AND TOM KONSTANTY'S MOTION FOR SUMMARY JUDGMENT**, with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses and/or placed in the U.S. mail, postage prepaid, and/or sent via email addressed to the following:


Mark Janny, #150344
Colorado State Penitentiary
P.O. Box 777
Cañon City, Colorado 81215
*Pro Se Plaintiff*

Gregory R. Bueno, Esq.
Colorado Attorney General's Office
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 10th Floor
Denver, Colorado 80203
gregory.bueno@coag.gov
*Attorneys for Defendants Gamez and Diaz de Leon*


s/ Dawn Ross
White and Steele, P.C.
Dominion Towers, North Tower
600 17th Street, Suite 600N
Denver, CO 80202-5406
Telephone:  303-296-2828
Facsimile:      303-296-3131