IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02840-RM-SKC

MARK JANNY,

    Plaintiff,

v.

JOHN GAMEZ, Community Parole Officer, Colorado Department of Corrections, in his individual capacity;
JIM CARMACK, Director of The Program, Denver Rescue Mission in Fort Collins, in his individual capacity;
TOM KONSTANTY, Co-Director of The Program, Denver Rescue Mission in Fort Collins, in his individual capacity

    Defendants.

---

## DEFENDANTS JIM CARMACK AND TOM KONSTANTY'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

---

COMES NOW the Defendants, Jim Carmack and Tom Konstanty, by and through the undersigned, John P. Craver of White and Steele, P.C., and file this Reply in Support of Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56, as follows:

### I.    INTRODUCTION

Mr. Carmack and Konstanty were not acting under the color of state law while Plaintiff was residing at the Denver Rescue Mission in Fort Collins. Rather, the facts not subject to reasonable dispute show that Mr. Carmack and Mr. Konstanty as representatives of the Rescue Mission were acting as a private entity. This is supported by scrutinizing the undisputed facts under the nexus, symbiotic relationship, joint activity, and public functions tests.

By his Response, Plaintiff focuses on the joint activity test in asserting the Rescue Mission's alleged conduct was state action. This argument must fail because Plaintiff has not raised a genuine issue regarding the existence of a common, unconstitutional goal between Officer Gamez and Rescue Mission representatives, Mr. Carmack and Mr. Konstanty. The facts not subject to reasonable dispute suggest the Rescue Mission and State had goals independent of each other. Furthermore, there is no genuine dispute that the State and the Rescue Mission did not engage in substantial cooperative action to expel Plaintiff from the Rescue Mission. The Rescue Mission administered its Steps to Success Program (the "Program") without any input from Officer Gamez. Finally, it cannot be said that the Rescue Mission played an integral part in depriving Plaintiff of his constitutional rights because the Rescue Mission administered the Program of its own accord irrespective of the State's goals. Denver Rescue Mission's alleged conduct was therefore private as a matter of law, and cannot provide the legal basis to sustain a § 1983 claim.

Plaintiff's factual arguments are merely unsupported conjecture in an attempt to raise a genuine factual issue. Plaintiff's unsupported arguments cannot defeat summary judgment in this matter. See, *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008); see also, *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1258 (10th Cir. 2008). Therefore, Mr. Carmack and Mr. Konstanty are entitled to summary judgment in their favor as a matter of law.

## II.   ANALYSIS

By his Response, Plaintiff fails to raise genuine factual issues that would defeat summary judgment. Rather, the facts not subject to reasonable dispute show the Rescue Mission is a private actor because: (A) the State had no coercive authority over the Rescue Mission under the

nexus test; (B) the Rescue Mission would be the same entity without state involvement under the symbiotic relationship test; (C) the Rescue Mission's function is not exclusively reserved for the state under the public function test; and (D) there is no evidence suggesting the State and the Rescue Mission acted in concert to deprive Plaintiff of constitutional rights under the joint action test.

When analyzing the facts under the lens of each test, the Court must determine whether "the conduct allegedly causing the deprivation of a federal right [is] fairly attributable to the State." *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). The Court must keep in mind the following general principals when applying each of the four tests:

> a plaintiff must demonstrate that the alleged deprivation of constitutional rights was 'caused by the exercise of some right or privilege **created by the State** or by a rule of conduct **imposed by the State** or by **a person for whom the State is responsible**.' In addition, 'the party charged with the deprivation **must be a person who may fairly be said to be a state actor**.'

*Id.* (citing same).

### A. The State had No Coercive Authority Over the Rescue Mission Under the Nexus Test.

By his response, Plaintiff does not and cannot raise a factual dispute that the nexus test suggests the Rescue Mission was a private actor. The facts not subject to reasonable dispute show that the State did not maintain any coercive authority over the Rescue Mission, formal or otherwise. Rather, the Rescue Mission was a private entity that administered its Steps to Success Program in its own discretion, by its own terms, and without state oversight. Therefore, the

nexus test suggests the Rescue Mission was a private actor when it decided, by its own accord, to terminate Plaintiff's residence for violation of its house policies.

### B. The Rescue Mission Would be the Same Entity Without State Involvement Under the Symbiotic Relationship Test.

Plaintiff also raises no factual dispute regarding the symbiotic relationship test. This makes sense because there are no facts that would indicate the Rescue Mission is private in name only, and is otherwise so entwined with the State that it would be unrecognizable without the State's involvement. *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001). Indeed, there is no contract between the Rescue Mission and the State. The Rescue Mission is one of many transitional facilities designated by the State as an acceptable refuge for former prisoners to transition into everyday society. The Rescue Mission accepts residents and participants in its programs from all over the state, with various circumstantial backgrounds—not just parolees. The State has no control over how the Rescue Mission operates, it does not make decisions as to how the Rescue Mission runs its programs, and it has no input as to the Rescue Mission's admissions and administrative decisions. As such, the symbiotic relationship test suggests the Rescue Mission is a private actor.

### C. The Rescue Mission's Function is not Exclusively Reserved for the State Under the Public Function Test.

Plaintiff cannot dispute that the Rescue Mission serves a function that is not exclusively reserved for the State. The facts not subject to dispute show that Mr. Carmack and Mr. Konstanty are employees of a non-profit, private religious organization that provides services to homeless individuals. The Rescue Mission's function is not exclusively reserved for the State. See, *Gross v. Samudio*, 630 Fed. Appx. 772, 778 (10th Cir. 2015) (dismissing claim against sex

offender treatment program parolee was ordered to attend); *Byng v. Delta Recovery Servs., LLC*, No. 6:13-CV-733 MAD/ATB, 2013 U.S. Dist. LEXIS 105606, at *9 (N.D.N.Y. July 29, 2013), *aff'd*, 568 F. App'x 65, 66 (2d Cir. 2014) (affirming dismissal of claims against residential substance abuse program plaintiff parolee was ordered to attend); *Smith v Devline*, 239 F. App'x 735, 737 (3d Cir. 2007) (same); *Justice v. King*, No. 08-CV-6417-FPG, 2015 U.S. Dist. LEXIS 39555, at *19 (W.D.N.Y. 2015) (collecting district court cases in the Second Circuit).  Therefore, the Rescue Mission is a private actor for purposes of the public function test.

      **D.**      **No Competent Evidence Suggests the State and Rescue Mission Acted in Concert to Deprive Plaintiff of Rights Under the Joint Action Test.**

Plaintiff's primary contention is that Mr. Carmack and Mr. Konstanty, as representatives of the Rescue Mission, engaged in joint action with the State through Officer Gamez in depriving his constitutional rights.  However, Plaintiff cannot succeed in this contention because the facts not subject to reasonable dispute show the State did not create the Rescue Mission's rules, the Rescue Mission and not the State imposed and enforced its own rules, and the State is not responsible for the conduct of the Rescue Mission. *Gallagher*, 49 F.3d at 1447 (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).  For these reasons, it cannot be said the Rescue Mission was a state actor.

In his Response, Plaintiff states as follows: "Here, the common unconstitutional goal was to coerce the plaintiff into following the religious house rules of the Program upon threat of consequence namely going to prison and jail and not allowing the plaintiff to express his own religious views upon the same coercive threat." Pl. Resp. (ECF 224) at 10.  Plaintiff alleges that the Rescue Mission required him to attend bible studies, Mr. Carmack asked Officer Gamez to change his curfew so he could attend worship services per Rescue Mission rules, and Plaintiff

5

was eventually terminated as a guest because he failed to attend services. *Id.* at 10-11.  Plaintiff also alleges he participated in a telephone conference with Officer Gamez and Mr. Carmack in which Plaintiff was instructed that he would be subject to expulsion from the Program, and potential parole violation, if he did not comply with the Rescue Mission's rules.  Plaintiff asserts he attended a parole meeting with Officer Gamez and Mr. Carmack where he was again instructed that he could be expelled from the Program if he refused to comply with Rescue Mission Rules, and at the request of Mr. Carmack, Officer Gamez changed Plaintiff's curfew in order to comply with daily chapel service.

Plaintiff's allegations do not show that Mr. Konstanty was involved in a common goal with the state to deprive Plaintiff of constitutional rights. Notably, Plaintiff does not allege that Mr. Konstanty even interacted with Officer Gamez sufficient for cooperative action.  In Plaintiff's deposition, he stated that he did not think Mr. Konstanty was present for Mr. Carmack's phone call with Officer Gamez. **Exhibit A** (Pl. Dep.) at 102:19-103:25.  However, he directly contradicts his own sworn deposition testimony in his Response, stating that Mr. Konstanty was present for a phone call between Mr. Carmack and Officer Gamez.  Even if this allegation is taken as true Plaintiff does not allege Mr. Konstanty exchanged any words with Officer Gamez whatsoever.  It seems that Plaintiff's reason for including Mr. Konstanty in this lawsuit is the allegation that Mr. Konstanty led bible studies which Plaintiff was required to attend if he wanted to remain at the Rescue Mission.  Based on these allegations, Mr. Konstanty cannot be perceived to have been involved in a common goal with the State to deprive Plaintiff of constitutional rights.  Mr. Konstanty merely led bible studies that Plaintiff was required to attend per the rules imposed and independently enforced by the Rescue Mission.

Furthermore, Plaintiff has failed to establish the State and Rescue Mission "share[d] a common, unconstitutional goal." *Gallagher*, 49 F.3d at 1454.  Rather, the facts not subject to reasonable dispute show the Rescue Mission had independent goals in admitting residents and administrating its Program that had nothing to do with the goals of the State.  Plaintiff alleges the Rescue Mission and the State shared a common unconstitutional goal of coercing Plaintiff to submit to its religious program and did not allow Plaintiff to express his own views on religion.  This is unfounded.  The evidence shows the State's goal was to assure Plaintiff was in an approved Residence in compliance with condition #2 of his Parole Order, dated November 24, 2014. **Exhibit B** (Parole Order); **Exhibit C** (Gamez Resp. to Pl. Combined Discovery).  The Rescue Mission's goal was to create an atmosphere in which its participants in the Program could become "productive, self-sufficient citizen[s] living in healthy community relationships." **Exhibit D** (Rescue Mission Transitional Community Application) at 1.  Among the objectives explicitly set forth in the Program is "full program compliance." *Id.*  In his affidavit, Mr. Carmack explained the goal of the Program was to encourage participants to get a job, save money, and move into their own residence. **Exhibit E** (Carmack Aff.) at ¶¶ 5, 8.  The Rescue Mission maintained complete discretion over who it allowed to reside in its facility and who it allowed to participate in its Program. *Id.* at ¶ 3.  Plaintiff failed to comply with the Rescue Mission's requirements. **Exhibit A** (Pl. Dep.) at 109:4-14; 111:13-21.  The Rescue Mission and the State did not impose some common goal designed to infringe Plaintiff's constitutional rights—they had independent goals. **Exhibit E** (Carmack Aff.) at ¶ 8.  The Rescue Mission expelled Plaintiff for violating its rules which had nothing to do with the State. **Exhibit A** (Pl. Dep.) at 109:4-14; 111:13-21; **Exhibit E** (Carmack Aff.) at ¶¶ 8, 12.   Plaintiff has not alleged

7

that Officer Gamez "participated in or influenced" the Rescue Mission's decision to terminate Plaintiff's participation in the Program. The Rescue Mission exercised complete and total control over that decision with no influence from Officer Gamez. **Exhibit E** (Carmack Aff.) at ¶ 12. Plaintiff has not established competent facts that negate or rebut this evidence other than mere conjecture, so this evidence is not subject to reasonable dispute.

Additionally, Plaintiff has not raised a genuine factual dispute that would show Mr. Carmack engaged in a substantial degree of cooperative action with Officer Gamez or overt and significant state participation requisite for a finding of joint action. In *Gallagher*, a state university leased its facilities to a private company to hold a concert on campus. 49 F.3d at 1455. The plaintiffs challenged certain actions taken by concert security guards employed by the company, contending the guards were safeguarding public property. *Id.* The university had general requirements that security must be provided, but was silent regarding the specific type of security to be provided by lessees. *Id.* The Tenth Circuit observed, "[t]his silence establishes no more than the University's acquiescence in the practices of the parties that leased the [facilities] and is insufficient to establish state action under the joint action test." *Gallagher*, 49 F.3d at 1455. Here, the facts show the Rescue Mission enforced its own policies and procedures without state involvement. **Exhibit E** (Carmack Aff.) at ¶ 3. Officer Gamez required that Plaintiff reside at the Rescue Mission in order to satisfy condition #2 of his parole order. **Exhibit B** (Parole Order); **Exhibit C** (Gamez Resp. to Pl. Combined Discovery). Even if Mr. Carmack had a telephone conference and an in person meeting with Officer Gamez and Plaintiff to discuss the rules Plaintiff was required to follow, this shows nothing more than the State's acquiescence in

8

the practices of the Rescue Mission.[1] This was made apparent by Plaintiff's allegation that Officer Gamez changed Plaintiff's curfew to accommodate the Rescue Mission's Program rules. Pl. Resp. (ECF 224) at 10-11. The evidence shows Officer Gamez had no input regarding how the Rescue Mission administered its Program. **Exhibit E** (Carmack Aff.) at ¶¶ 8, 12. Plaintiff does not dispute this fact. As established in *Gallagher*, acquiescence is insufficient to establish state action under the joint action test. 49 F.3d at 1455.

Plaintiff does not provide analysis that the Rescue Mission was an integral part in depriving his constitutional rights. As discussed above, the undisputed facts show the Rescue Mission administered its own Program without Officer Gamez' input. The State had its own goal, and at most, acquiesced to the terms of the Rescue Mission's Program. It therefore cannot be said the Rescue Mission played any role, much less an integral one, in accomplishing the State's goal.

The undisputed facts show the Rescue Mission and not the State created, imposed, and enforced its own rules, and the State had no input as to the manner in which Rescue Mission administered its policies and procedures. **Exhibit E** (Carmack Aff.) at ¶¶ 3, 4, 6, 8, 10, 12. Plaintiff cannot establish as a matter of law that the Rescue Mission was acting under color of state law in administering its Program. Therefore, the Rescue Mission's independent procedures, policies, and decision to expel Plaintiff from its program was private action.

---

[1] Plaintiff alleges he was forced to comply with the Rescue Mission's rules when Officer Gamez reminded him of the consequences for violating his parole. Pl. Resp. (ECF 224) at 11-12. The penalty for parole violations were well known to Plaintiff before he went to the Rescue Mission—Plaintiff's parole order is dated November 24, 2014. **Exhibit B** (Parole Order). Plaintiff does not allege Officer Gamez imposed new Rescue Mission rules on Plaintiff in the phone call or meeting. Taking Plaintiff's allegations as true, Officer Gamez reminded Plaintiff that his parole could be revoked if he violated the conditions of parole by causing expulsion from his residence of record.

### III. CONCLUSION

Mr. Carmack and Mr. Konstanty, as employees of a private entity, were not acting under the color of state law pursuant to any of the four tests. Their decisions regarding the Rescue Mission's internal procedures and policies in administering the Program were purely private for purposes of this lawsuit. The State had no control over the admissions or operations of the Rescue Mission, and the Rescue Mission did not sufficiently entwine its operations with that of the state. Further, there was no conspiracy between the Rescue Mission Defendants and Officer Gamez to deprive Plaintiff of a constitutional right, the Defendants did not engage in a substantial degree of cooperative action, and there was no overt and significant state participation in the Rescue Mission's Program. At no time was the conduct of the Rescue Mission Defendants an integral part of the alleged deprivation of Plaintiff's rights. Thus, Defendants Carmack and Konstanty did not act under color of state law in administering the Rescue Mission's Program, and Plaintiff's claims against the Rescue Mission Defendants must fail as a matter of law.

Respectfully submitted this 16th day of January, 2020.

 s/ John P. Craver
John P. Craver
White and Steele, P.C.
Dominion Towers, North Tower
600 17th Street, Suite 600N
Denver, Colorado 80202-5406
Telephone: (303) 296-2828
jcraver@wsteele.com
Attorneys for Defendants Jim Carmack
and Tom Konstanty

# CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2019 I electronically filed the foregoing, **DEFENDANTS JIM CARMACK AND TOM KONSTANTY'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**, with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses and/or placed in the U.S. mail, postage prepaid, and/or sent via email addressed to the following:

Mark Janny, #150344
Colorado State Penitentiary
P.O. Box 777
Cañon City, Colorado 81215
*Pro Se Plaintiff*

Gregory R. Bueno, Esq.
Colorado Attorney General's Office
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 10th Floor
Denver, Colorado 80203
gregory.bueno@coag.gov
*Attorneys for Defendants Gamez and Diaz de Leon*

        s/ Dawn Ross
        White and Steele, P.C.
        Dominion Towers, North Tower
        600 17th Street, Suite 600N
        Denver, CO 80202-5406
        Telephone:  303-296-2828
        Facsimile:     303-296-3131